UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------X **Docket#**
LIBERTY INSURANCE CORPORATION,: 14-cv-02168-SUMMARY
JUDGMENT-JO
        et al.,        :
          Plaintiffs,  :
                    :
  - versus -       : U.S. Courthouse
                    : Brooklyn, New York
                    :
Mohuchy, D.S. et al,   : February 19, 2016
          Defendant   :
----------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Plaintiff:**      **Robert A. Stern, Esq.**
                            **Daniel Scott Marvin, Esq.**
                            **John Paul Mulvaney, Esq.**
                            Stern & Montana, LP
                            One World Financial Center
                            30th floor
                            New York, NY 10281

**For the Defendant:**     **Charles H. Horn, Esq.**
                            Russell Friedman &
                            Associates LLP
                            3000 Marcus Avenue, Suite 2E3
                            Lake Success, NY 11042

**For the Movant:**       **Louis Frank Chisari, Esq.**
                            Marcote & Associates, P.C.
                            403 Merrick Avenue
                            2nd Floor
                            East Meadow, NY 11554

**Transcription Service:**  **Transcriptions Plus II, Inc.**
                            61 Beatrice Avenue
                            West Islip, New York 11795
                            laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                    Proceedings

1           THE COURT:  Sorry to keep you waiting.  Please

2    have a seat.

3           THE CLERK:  Civil Cause for a Status

4    Conference, Liberty Insurance Corporation, et al. v.

5    Mohuchy, D.S. et al., case number 14-cv-2168.

6           Counsels, please state your name for the

7    record, beginning with the plaintiff.

8           MR. MARVIN:  Daniel Marvin, Robert Stern and

9    John Mulvaney of Stern and Montana, LLP for the

10   plaintiffs.

11          Good morning, Judge.

12          THE COURT:  Good morning.

13          MR. CHISARI:  For the nonparties, Frederik

14   Eugen Jente and Yin Yang Harmony Acupuncture, by Louis

15   Chisari.

16          Good morning, your Honor.

17          THE COURT:  Good morning.

18          MR. HORN:  For the remaining defendants,

19   Charles Horn.

20          THE COURT:  Good morning.

21          MR. HORN:  Good morning.

22          THE COURT:  All right.  Folks, we've got -- and

23   tell me if I've missed something but I've got two motions

24   to quash by Mr. Chisari's clients and one motion to

25   compel by the plaintiffs and they're all sort of around

3

Proceedings

1  the same issues, so I thought it would be useful to bring

2  you all in together on those three things.  Is there

3  anything else that's outstanding?

4           MR. STERN:  Well, excuse me, your Honor.

5  Robert Stern for the plaintiffs.

6           THE COURT:  Yes.

7           MR. STERN:  There is the application to -- we

8  would like, if the Court will entertain it, we would like

9  to make an oral application to renew the request for an

10  extension of expert discovery.

11           THE COURT:  Let's put that off to the side.

12  Have I missed anything that's already been filed?

13           MR. STERN:  No.

14           THE COURT:  Okay, good.  So let's deal with the

15  -- but remind me please if I forget to come back to that.

16           So let's deal with the motions.  I'm happy to

17  take them up in any order but I thought it might make

18  sense given that on both of sides of the issues, a lot of

19  it comes down to the relevance of the materials that the

20  plaintiffs seek.  If I could ask the plaintiff's counsel

21  to -- and I've read the papers but just walk me through

22  your pitch on the relevance of what you're seeking by

23  subpoena here.

24           MR. MARVIN:  Sure, Judge.  With respect to the

25  movant, although he has settled in this matter, the

4

Proceedings

1   movant was part of what was --

2           THE COURT:  I'm sorry, we've got two movants.

3   So if you could be clear.

4           MR. MARVIN:  I'm sorry.  The movant is Mr.

5   Jente and --

6           THE COURT:  Right.  We've also got Yin Yang.

7           MR. CHISARI:  And Yin Yang.  Your Honor, could

8   I clarify?  Mr. Jente was the principal owner --

9           THE COURT:  Right.

10          MR. CHISARI:  -- of Yin Yang Harmony.

11          THE COURT:  Right.

12          MR. CHISARI:  So they kind of are together.

13          THE COURT:  All right.  So it's -- okay.  All

14  right.

15          MR. CHISARI:  Yeah.

16          THE COURT:  Go ahead.

17          MR. MARVIN:  With respect with that, there's

18  actually one movant.  Mr. Jente is moving to quash to

19  different personal bank accounts.

20          THE COURT:  Uh-huh.

21          MR. MARVIN:  One from Bank of America and one

22  from Chase Bank.

23          THE COURT:  Right.

24          MR. MARVIN:  Now although the movant has

25  settled, the movant was part of what was essentially a

5

Proceedings

1  continuous and centralized acupuncture scheme that

2  operated out of 1975 Linden Boulevard.  Even when the

3  movant purportedly left that scheme in 2013, his role was

4  essentially taken over by defendant Luis, who is still a

5  defendant -- an active defendant in this matter and who

6  was mentored by Mr. Jente.

7          When the plaintiffs reviewed Mr. Luis' bank

8  records, we noted several suspicious things.  The first

9  thing we noted was after Mr. Jente purportedly left his

10  role in the scheme, he was funneled approximately $40,000

11  in a short period of time by Mr. Jente (sic).

12          THE COURT:  Those are the checks that --

13          MR. MARVIN:  I'm sorry.  Yes, those are the

14  checks.  By Mr. Luis, excuse me.

15          THE COURT:  Okay.  Just as a point of

16  information, I think this was in your letter but the

17  checks that you had as exhibits, you had the backs of the

18  checks also and the deposits, which accounts do those

19  show deposits into?

20          MR. MARVIN:  Those are deposits into Mr.

21  Jente's personal bank account.

22          THE COURT:  The ones that are issue here.

23          MR. MARVIN:  Yes.

24          THE COURT:  Okay.  Go ahead.

25          In addition, we also noticed that Mr. Luis had

6

Proceedings

1   a very suspicious pattern of massive deposits into his

2   bank account from monies generated from the acupuncture

3   scheme and immediate withdrawals of massive cash

4   referrals.  And that money, we believe, was used as

5   kickbacks in the acupuncture scheme and is still

6   unaccounted for.

7            Now insofar as Mr. Luis replaced Mr. Jente in

8   the scheme, we believe Mr. Jente's bank records will show

9   a similar pattern of deposits, structured deposits and

10  structured withdrawals.

11           THE COURT:  Let me stop you there.  Let's

12  assume that's correct for purposes of argument.  Why

13  would that be relevant to your case against Luis?

14           MR. MARVIN:  Well, as I am explaining, your

15  Honor, the scheme was an ongoing -- it was the same

16  scheme.

17           THE COURT:  Uh-huh.

18           MR. MARVIN:  And we don't know how Mr. Luis is

19  going to try to explain away those deposits and those

20  withdrawals.  He may try to use an innocent explanation

21  for those deposits and withdrawals and if we can get to

22  the root of the withdrawals and deposits within the

23  entire scheme, that will undercut any argument he'll

24  attempt to make.

25           MR. STERN:  Your Honor, if I may add to what

7

Proceedings

1    Mr. Marvin indicated?

2            THE COURT:  Sure.

3            MR. STERN:  The documents are relevant because

4    they, one, will demonstrate a fraudulent business plan.

5    When you look at what Mr. Luis did with respect to his

6    structured payments that he made from his P.C.

7    Acupuncture Works, to his personal accounts, and then

8    structured withdrawals, so that you would have $8,000 for

9    example, deposited into his personal account and then

10   $4,000 withdrawn.  Then you would have all this cash,

11   hundreds of thousands of dollars, in cash, withdrawn over

12   a two-year period, that clearly evidences money

13   laundering from the P.C. to his personal accounts and

14   when you look at during the period that Mr. Jente closed

15   down his P.C. and Mr. Luis opened up Acupuncture Works in

16   2013, there's a seven-month period in which $40,000 is

17   being kicked back -- being funneled back to Mr. Jente.

18           That very well may be money that was used to

19   pay kickbacks during that interim period before Mr. Luis

20   started to pay his kickbacks.  So we should --

21   respectfully, the plaintiffs should be entitled to follow

22   the money to demonstrate that there's a fraudulent

23   business plan, that there is -- that this is how the

24   scheme to defraud was executed by the parties and

25   establish where the money went.

8

Proceedings

1          When you have all this money -- and if you look
2     at Mr. Luis' payments, he can't explain all the cash
3     withdrawals.  We know that based on his testimony.  He
4     can't explain where that money is going.  And what you do
5     have is a fraudulent business plan where he fraudulently
6     expensed all of the cash withdrawals which was really
7     income to him.  He fraudulently expensed it on his
8     corporate tax returns and then reported lower income so
9     he wouldn't pay taxes.  And the only reason I believe you
10    would do that is because you're not keeping that money.
11    Why would you pay taxes on it.  It's a kickback.  It's
12    money that you convert into cash and you are giving to
13    someone else.  And that's exactly what happened here.
14          And since Mr. Luis testified that Mr. Jente was
15    his mentor and that Acupuncture Works were the immediate
16    successor to Mr. Jente's P.C., then it makes sense that
17    Mr. Jente would have done exactly the same thing that Mr.
18    Luis did.
19          And since he was a defendant on the case and
20    since we allege -- the plaintiffs allege that all of the
21    P.C.s operating out of that location operated in the same
22    manner following a common scheme to defraud, how can the
23    plaintiffs be deprived of the opportunity to establish
24    that yes, the predecessor P.C., Mr. Jente's P.C., was
25    engaged in the same exact scheme to defraud.

9

Proceedings

 1          THE COURT:  All right.

 2          MR. MARVIN:  And one more thing alleged, your

 3   Honor, what Mr. Stern said is -- he's describing what in

 4   these type of cases which your Honor has seen before, a

 5   classic example of what goes on.  We have one P.C. which

 6   disappears and the very next day another P.C. takes its

 7   place without any startup costs, it treats the same

 8   patients from the same facilities and is engaged in the

 9   same scheme to defraud.  It's essentially one continuous

10   operation where proof of the predecessor is highly

11   relevant, the proof of the fraud engaged in by the

12   successor.

13          THE COURT:  All right.  Thank you.

14          Mr. Chisari?

15          MR. HORN:  Yes, your Honor.  I've gone through

16   te summons and complaint and nowhere in the summons and

17   complaint do they allege Yin Yang Harmony Acupuncture or

18   Mr. Jente was a fraudulent corporation or paying

19   kickbacks.  Nowhere in there do they allege he's a

20   predecessor or complied in this fraud.  It's not alleged

21   in the summons and complaint.  They let him out.  They --

22          THE COURT:  What has that got to do with the

23   argument here?

24          MR. CHISARI:  Well, in other words, they're

25   trying to say that his prior business operation was the

Proceedings

1    model for Mr. Luis' prior business --

2              THE COURT:  Right.

3              MR. CHISARI:  -- current business model, except

4    they never alleged that in their summons and complaint.

5              THE COURT:  Why do they have to prove -- why do

6    they have to allege that to prove that the reason a jury

7    can infer that Luis and his company were acting in a

8    fraudulent way is correct and bolster that allegation by

9    resort to evidence not only about what Luis did but

10   resort to evidence about how it carries on a practice by

11   Jente.

12             MR. CHISARI:  Well --

13             THE COURT:  Why can't they prove it in that

14   way?

15             MR. CHISARI:  Well, relevant -- revelent

16   (sic) --

17             THE COURT:  Relevance is the word I think

18   you're searching for.

19             MR. CHISARI:  Yes -- would be that because one

20   did it one way doesn't necessarily mean another and this

21   is a fishing trip and my point to that is these subpoenas

22   were issued before Mr. Luis even testified at his

23   deposition.  So for them to say that Mr. Luis couldn't

24   explain his cash withdrawals must mean that Mr. Jente's

25   not going to be able to explain his cash withdrawals.

11

                         Proceedings

1   They haven't deposed my client and their -- and these

2   subpoenas were issued before they had any of this

3   testimony from Mr. Luis.

4            THE COURT:  Well, it's possible that the

5   argument would be weak or if they didn't have that

6   testimony but now they have it.

7            MR. CHISARI:  Well, they have that Mr. Luis

8   can't explain his.

9            THE COURT:  Yes.

10           MR. CHISARI:  They have not test -- they have

11  not deposed my client.

12           THE COURT:  Right.  They will, I am sure,

13  right?

14           MR. CHISARI:  Well, I believe his deposition is

15  scheduled for the 24th at this point.

16           THE COURT:  Okay.

17           MR. CHISARI:  And I would say maybe if he can't

18  answer their questions, there would be some relevance to

19  the bank records but at this point, there is no relevance

20  to those bank records because they have nothing to

21  contradict anything --

22           THE COURT:  Uh-huh.

23           MR. CHISARI:  -- that Mr. Luis has said.

24           THE COURT:  I'm sorry.  I didn't mean to cut

25  you off.

12

Proceedings

1          MR. CHISARI:  Your Honor, go ahead.

2          THE COURT:  I just didn't want to lose track of

3    this question.  In your letters, you had referred to the

4    bank accounts at issue, if the subpoenas are honored,

5    revealing privileged information.

6          MR. CHISARI:  Well, there may be privileged

7    information as far as what he's paid his attorneys, which

8    could be attorney-client privilege and where the source

9    of those funds --

10         THE COURT:  Isn't there black letter law in

11   this circuit that fee information is not privileged?

12         MR. CHISARI:  Oh, your Honor, okay.  I --

13         THE COURT:  No, isn't that correct?

14         MR. CHISARI:  I -- if your Honor is making that

15   representation, I believe it.  I did not see it when I

16   was doing my research.

17         THE COURT:  Okay.  Have you determined and

18   determined that there are such payments?

19         MR. CHISARI:  I have not gotten all the bank

20   records.

21         THE COURT:  So it's speculative.

22         MR. CHISARI:  It's speculative that there would

23   -- well, I know he's paid attorneys their fees but there

24   may be other privilege between him and doctors or his --

25   these are personal bank records.  These aren't business

Proceedings

1   bank records.

2           THE COURT:  Wait a minute.  How is something in

3   a bank record going to reveal a privilege and even if it

4   does, under clearly established third-party doctrine out

5   of the Supreme Court, Smith and Miller, when efforts by

6   ability in the future, and I know that's open to

7   question, doesn't the current state of the law make it

8   pretty clear that by giving it over to the bank, he

9   waived a privilege with respect to the bank seeing it and

10  so he can't say that that information is privileged?

11  Isn't that again just black letter case law?

12          MR. STERN:  It is, your Honor.

13          THE COURT:  So --

14          MR. CHISARI:  But again --

15          THE COURT:  -- what possible privilege might

16  there be?

17          MR. CHISARI:  It's not there -- personal

18  information that he may not want out to the insurance

19  carrier.  Unfortunately --

20          THE COURT:  Is that privileged though?

21          MR. CHISARI:  Privileged, no.

22          THE COURT:  Okay.  So I just want to --

23          MR. CHISARI:  Yeah.  No, I understand where you

24  are --

25          THE COURT:  Because privilege would really

14

Proceedings

1   trump a lot of arguments that they could make about

2   relevance.

3         MR. CHISARI:  Right.

4         THE COURT:  But that's why I am focusing on it.

5   Is there any viable privilege claims being made here?

6         MR. CHISARI:  No, your Honor.

7         THE COURT:  Okay.  So go ahead with your

8   relevance argument.

9         MR. CHISARI:  And we also feel at this point

10  this is just a fishing expedition because --

11        THE COURT:  Yes.

12        MR. CHISARI:  -- they had the opportunity

13  before they settled with Mr. Jente and Yin Yang

14  Acupuncture to do all this discovery and they chose not

15  to.

16        THE COURT:  But does that bar them?

17        MR. CHISARI:  I think it does, your Honor.  At

18  this point, they're now trying to backdoor in --

19        THE COURT:  But how does it bar them?  You

20  know, I did notice that you didn't really cite in any law

21  in your letter and they cited some that accords with my

22  understanding of how the law works in this area, so how

23  does the fact by itself that your guy settled immunize

24  him from further discovery if that discovery is relevant?

25  I understand you say it's not relevant.

Proceedings

1        MR. CHISARI:  It's -- right.

2        THE COURT:  But assuming --

3        MR. CHISARI:  We take --

4        THE COURT:  -- assuming it is relevant for

5   purposes of this question --

6        MR. CHISARI:  Right.

7        THE COURT:  -- how would your client's

8   settlement immunize him against further discovery of

9   relevant information -- you know, (indiscernible).

10        MR. CHISARI:  I would believe that before they

11   could even get this discovery, they would have to depose

12   him to get some controversy that would make it relevant.

13   At this point, we don't believe any of the records are

14   relevant.

15        THE COURT:  I see.  Okay.

16        MR. CHISARI:  And at this point, he's got --

17   you know, again, they're just -- they're, again, just

18   guessing.  They're saying well, if this guy did it, this

19   guy must have done it because he said he's his mentor.

20   Well, we don't know that at all.  You haven't questioned

21   him yet of any of his business practices and, in fact,

22   you settled --

23        THE COURT:  Yes.

24        MR. CHISARI:  -- with him before his business

25   practices were an issue.

Proceedings

1          THE COURT:  Okay.  I do think that that

2    somewhat in a very important way mischaracterizes what

3    the plaintiffs are saying but I understand your argument.

4    Is there anything else you want me to consider on a

5    relevance issue?

6          MR. MARVIN:  No, your Honor.

7          THE COURT:  Okay.  And Mr. Horn, anything you

8    would like to consider from your perspective?

9          MR. HORN:  To be honest with, your Honor, as

10   far as representations, Mr. Luis was deposed.  He was

11   questioned at length regarding what the nature of

12   withdrawals.

13         For 14 hours, he testified.  He gave, you know,

14   concrete examples of what money was spent on.  So that

15   was representation that I wanted to address.

16         And as far as this goes, I just wanted to point

17   out as I am more familiar with the case than Mr. Chisari

18   is, if you look through the complaint, your Honor, all of

19   the allegations say that the kickback scheme went from

20   either his client or my client to Mohuchy or Zolor -- I'm

21   going to mispronounce the name -- Gulchehra Zulunov.

22         THE COURT:  Yes.

23         MR. HORN:  Never once is it ever alleged that

24   there's any kickbacks or anything by and between my

25   client and his, for if there were in the fee splitting,

Proceedings

1    it wouldn't be fee splitting.  They're both

2    acupuncturists.  They would be nothing wrong with it and

3    I think what this all comes down to is they've cast a

4    very wide net and at the end of the day, they're now

5    going into the personal records of someone who even at

6    its very core, has no direct relevance.

7              Now what your Honor said that well, if they

8    want to bring it into evidence to show well this guy did

9    it, perhaps so did my guy do it the same way, then I

10   don't even have an argument for that but I would just say

11   if you were going to weigh the two --

12             THE COURT:  Uh-huh.

13             MR. HORN:  -- it wouldn't -- invading someone's

14   privacy, there's no probative value to it.  They were two

15   separate enterprises.

16             THE COURT:  Uh-huh.

17             MR. HORN:  And just saying the one guy did it,

18   therefore it's more likely than not that the next guy did

19   it but if you look at paragraph 86 of the complaint --

20             THE COURT:  Uh-huh.

21             MR. HORN:  -- if you look at the causes of

22   action which are the three -- I believe they're the --

23   hang on.  I don't have it in front of me.  And, your

24   Honor, before I go show you the cause of action, I would

25   just point out that fraudulently incorporated

Proceedings

1   corporations in the complaint does not apply to Mr. Jente

2   or my client.  It's a reference to other entities that

3   have been previously settled.

4            Now if you look, and I would direct your

5   attention, your Honor, to page 75.

6            THE COURT:  Of what?

7            MR. HORN:  I'm sorry, the complaint.

8            THE COURT:  Okay.  Give me a moment.  Yes.

9            MR. HORN:  Now if you go through these -- the

10  bullet points here, it talks about kickback schemes

11  between acupuncturists and the fraudulently incorporated

12  P.C.s, financial relationships between the acupuncturist

13  and the fraudulently incorporated P.C.s.

14           Going through -- this is further discussed upon

15  throughout paragraph 86, paragraph 5.  You could go

16  through the complaint and all of the references talk

17  about a scheme of money going from acupuncturists to --

18  in this case, chiropractor or billing company.  Never

19  anywhere in this complaint, does it allege any illegal

20  money was exchanging hands by and between our two

21  clients.  Then --

22           THE COURT:  Does it have to -- I'm sorry, but

23  is it -- perhaps I just have a fundamentally different

24  understanding of what discovery is for but does it have

25  to directly prove an allegation -- does that allegation

19

Proceedings

1  have to be explicitly in the complaint before this

2  discovery is relevant?

3          MR. HORN:  Well, if --

4          THE COURT:  Does it have to be?

5          MR. HORN:  Does it have to be in the complaint

6  before the discovery is relevant?

7          THE COURT:  Yes, that particular allegation as

8  a matter of law.

9          MR. HORN:  Yes, yes.  I believe it would, your

10 Honor.

11         THE COURT:  I see.  Okay.

12         MR. HORN:  It must have some probative value.

13         THE COURT:  This is where you're going to have

14 to seek review, I guess, because I disagree with that

15 proposition.

16         MR. HORN:  And if I may, your Honor?

17         THE COURT:  Of course, yes.

18         MR. HORN:  During the course of this

19 litigation, specifically at the last conference held

20 before your Honor, the issue was we were seeking to know

21 to whom kickbacks were paid, when they were paid.  Your

22 Honor made rulings on all of that but you made rulings

23 based on the representations of counsel that we could

24 read the complaint and figure out who the identities of

25 the individuals and then look to the financial records

20

Proceedings

1   that were provided and then look at the name.

2        THE COURT:  Uh-huh.

3        MR. HORN:  But now they're alleging that

4   there's another party, someone who is not the biller or

5   the chiropractor they -- Mohuchy that they allege.  So

6   what --

7        THE COURT:  Yin Yang is all over this

8   complaint, isn't it?

9        MR. HORN:  It is but there's never an

10  allegation that we're doing anything together.

11       MR. CHISARI:  No, the allegation is we were --

12  there was never an allegation we were paying a kickback

13  to anybody.

14       THE COURT:  Yes.

15       MR. CHISARI:  There's allegations we rented

16  space, we had -- we treated the same patients.  I mean,

17  that would almost be like taking a bunch of lawyers who

18  all operate in the same suite because I don't do wills

19  and trusts, I send him to Charlie because he does and

20  then somebody else in the suite gets in trouble for doing

21  something inappropriate as an attorney and then now we're

22  pointing a finger at all the attorneys in that office

23  must have done something wrong.

24       And again, Mr. Stern just brought out well,

25  they just -- he took out money and it must be a kickback.

21

Proceedings

1     THE COURT:  What are these payments because

2  there's like over $35,000 of payment?  What's that for?

3     MR. HORN:  My client and his client are best

4  friends, your Honor.  They --

5     THE COURT:  Yeah, so what's it for?  I have

6  some best friends too but I don't send checks to them

7  with that regularity to pay him 35K plus.

8     MR. HORN:  He helped -- he helped my client set

9  up his company.  They're both acupuncturists, perfectly

10  legal.  Gave him money for his assistance --

11     MR. CHISARI:  To start him --

12     MR. HORN:  -- and that's what he testified to.

13     MR. CHISARI:  And this is a repayment of that

14  money.

15     THE COURT:  I see.  All right.  Anything else?

16     MR. HORN:  On this topic?

17     THE COURT:  Yes.

18     MR. HORN:  No.

19     MR. MARVIN:  Would you like to address the

20  motion to compel, your Honor, now?  Would you --

21     THE COURT:  Well, it's all pretty much the same

22  thing.  I mean, it all goes down to the relevance and

23  frankly, there hasn't been any opposition to the motion

24  to compel.

25     MR. MARVIN:  That's correct.

Proceedings

1            MR. CHISARI:  No, your Honor, and I would ask

2    for a brief time to put in a --

3            THE COURT:  No, no.

4            MR. CHISARI:  I was only retained by --

5            THE COURT:  No.

6            MR. CHISARI:  -- I was only retained by --

7            THE COURT:  If you want to be heard on it, I'll

8    hear you but it's the same issue, right?  It's the

9    relevance of these --

10            MR. CHISARI:  At this point, it's all the

11    relevance, your Honor.

12            THE COURT:  Yes.

13            MR. CHISARI:  And Mr. Jente only retained me

14    yesterday, literally, to deal with Yin Yang.  Again --

15            THE COURT:  Look, Mr. Chisari, you've got a

16    hard job, all these lawyers do.  You work hard for a

17    living.  I get that and perhaps harder than I do, but I

18    don't think you're in an unfair position because you've

19    been litigating this issue for a little while now.  You

20    know what the issues are.

21            MR. CHISARI:  Yeah.  No, no, your Honor.  I do.

22            THE COURT:  Is there anything you would want to

23    say on the motion to compel that you haven't already

24    said?

25            MR. CHISARI:  No, your Honor.

Proceedings

1           THE COURT:  Oh, good.

2           MR. CHISARI:  Yes.

3           THE COURT:  All right.  Because I think it's

4    fully heard and I think it really -- please, if anybody

5    disagrees with me about this analytical part of it,

6    regardless of who is making the motion, it really comes

7    down to whether the relevance showing that the plaintiffs

8    have made for all of these materials satisfies Rule

9    26(b)(1).

10          And, you know, on the plaintiff's side, I

11   should just point out, in your letter -- one of the

12   letters you were citing the old version.

13          MR. MARVIN:  Okay.

14          THE COURT:  Yeah, about reasonably calculated.

15          MR. MARVIN:  We're aware, your Honor.  We

16   apologize.

17          THE COURT:  I don't think that the new version

18   changes the standard all that much.  It moves in the

19   portionality language from a different part of the rule

20   and it takes out the reasonably calculated.  But it's

21   still -- you know, is there a showing of relevance?  It

22   doesn't have to rise to the letter of admissibility.  And

23   I think the reasonably calculated language is in an

24   important sense, replaced by the proportional.  It

25   doesn't make sense for this case to give the parties

24
Proceedings

1   seeking this discovery the ability to prove its case from

2   this information because they've made a specific showing

3   that might help to do it.  I think they have.

4           I don't have to be persuaded that they're right

5   on the merits in terms of what it shows about the

6   relationships between the defendants and Jente and Yin

7   Yang but I think it's certainly a basis for taking the

8   discovery.  So on that basis, I am going to deny the

9   motions to quash and grant the motion to compel.

10          Oh, I am sorry, just to finish the record on

11  the -- on how I am getting there, the reason I think it

12  all comes down to relevance is because as Mr. Chisari

13  acknowledged, the privilege argument that was made in the

14  letter really does fall away.  So it comes down to

15  relevance.

16          Okay.  So Mr. Stern, you had raised a different

17  issue that you wanted to take up while we're here?

18          MR. STERN:  Yes, your Honor.  With respect to

19  the request, plaintiff's request for the -- to extend by

20  thirty days, expert discovery, we had reached out to Mr.

21  Horn.  He needed to -- he indicated that he needed to

22  consult with his client and was unable to do so before

23  today's hearing and as a result, we would like to renew

24  our application without the defendant's consent and the

25  reason that we're asking for the relief that we are is

25

Proceedings

1  because depositions are ongoing.  Document complaint --

2  there are documents that haven't been provided that need

3  to be provided to our expert in order to review.  It

4  wouldn't interview with any of the fact discovery that's

5  being -- that's ongoing.  Parties have been working at a

6  breakneck pace since the Court's last scheduling order.

7  And --

8            THE COURT:  Specifically, what are you

9  proposing?

10           MR. STERN:  What we're proposing, your Honor,

11 is a thirty-day extension of expert discovery to the end

12 of March, rebuttal thirty days later and that would be

13 the end of all discovery.

14           THE COURT:  I just want to see where we are in

15 the schedule here.  Right now we've got all discovery on

16 February 29th.  So you want an additional two months, it

17 sounds like.

18           MR. STERN:  That is correct, in the initial

19 discovery and then the --

20           THE COURT:  And what expertise are we talking

21 about here?

22           MR. STERN:  We're talking about a forensic

23 accountant --

24           THE COURT:  Uh-huh.

25           MR. STERN:  -- who would need to review the

Proceedings

1  financial documents, much of which hasn't been provided

2  yet but will be.  We're talking about a medical expert

3  who will review the documents, as in the process of, and

4  we're also talking about law enforcement but primarily,

5  it's in connection with the forensic and medical.

6          THE COURT:  Why hasn't this been done already?

7  I mean, I get there's some documents that you haven't

8  seen.

9          MR. STERN:  It's ongoing, your Honor.  It is

10  something that is taking place but there's still a large

11  volume of documents that have not yet been produced that

12  our expert would need to review and analyze before

13  issuing the report.

14          THE COURT:  Mr. Horn?

15          MR. HORN:  Your Honor, I am -- we were

16  contacted yesterday, by the way --

17          THE COURT:  Okay.

18          MR. HORN:  -- and I was in a deposition until 7

19  o'clock at night and so I didn't -- and I am meeting with

20  my client this afternoon this very topic but as I

21  informed Mr. Stern, if he was going to make this

22  application, I would have to oppose it.

23          Our position on this your Honor is I have

24  extreme trepidation when it comes to their

25  characterization of a law enforcement expert.  What I --

27

Proceedings

1          THE COURT:  I don't understand.  Wait.  You're

2   talking about timing?

3          MR. HORN:  Well, your Honor --

4          THE COURT:  You're not talking about any kind

5   of Daubert motion.

6          MR. HORN:  I understand that, your Honor.  The

7   reason I am concerned is what I believe is going to be

8   attempted is a completely revamping of the allegations in

9   the complaint.  I will be left naked, unable to ask for

10  any further discovery regarding this expert if we're only

11  extending the expert --

12         THE COURT:  Why is that so?  If they completely

13  change the character of the case when you get an expert

14  report, why can't you come to me and say look what they

15  did.  It's unfair.  Do you think I would just reflexively

16  say no matter how unfair it is to you, the deadline is

17  the deadline and so you are out of luck?

18         MR. HORN:  No, your Honor.

19         THE COURT:  So --

20         MR. HORN:  If I may continue?

21         THE COURT:  Yes.

22         MR. HORN:  You have that issue of this sort of

23  amorphous expert which I really don't understand what he

24  would be without evading the province of the jury but

25  setting that aside, I haven't spoken to my client about

Proceedings

1   it and I can't -- I have to object until I can speak to

2   my client about it.

3            THE COURT:  I understand that you can't consent

4   but is there a way that you're prejudiced by the timing

5   or that it's -- there's some affirmative reason to oppose

6   it?

7            MR. HORN:  I am, your Honor.  I was away for

8   three weeks for military duty and I was compelled to

9   drive forward.  I have been stuck to these deadlines with

10  a gun to my head.  I am being compelled to bring in

11  associates that are brand new to litigate this case.

12  They have an entire firm behind them.  My client is now

13  going to have to expend money for another two months.

14           I believe that the net that they have cast is

15  so wide it goes beyond any relevance, that it's going to

16  cost my client too much money and they will break him

17  financially.

18           THE COURT:  But wait, wait, wait.  If the

19  expert report were filed tomorrow, it would cost your

20  client the same, right?

21           MR. HORN:  I'm sorry?

22           THE COURT:  If their expert report were to file

23  tomorrow, it would cost your client the same to respond

24  and there would be no timing objection.

25           MR. HORN:  It would but I don't believe that

29

Proceedings

1   they're going to -- I think that they're still digging,
2   just as their evolving theory on this case -- and it has
3   been, your Honor. The theory they're going with right
4   now is not contained in the complaint. They can't --
5   they won't and they can't identify a single kickback that
6   was paid. They can't and won't identify a single fee-
7   splitting. I'm going to be taking the deposition of
8   their witness on Monday. I will be in a much better
9   position to know what their case is even about but to
10  consent to them, giving them thirty days to concoct a new
11  theory on this case and put my client in a worse
12  position, I think is -- I have to object at this
13  juncture.
14          THE COURT: All right. Well, then to avoid
15  concoction at a later date, tell me your theory, so it's
16  on the record and he knows what it is.
17          MR. STERN: Well, as we've -- as alleged in the
18  complaint, we allege that his -- that the defendants were
19  paying kickbacks to one or more of the P.C.s, Mohuchy
20  P.C.s and/or billing management companies including
21  Zulunov, in exchange for treating patients, claimants
22  pursuant to a predetermined protocol in which the
23  services weren't medically necessary.
24          And, in fact, Mr. Luis testified yesterday that
25  he introduces himself when claimants appear for -- at the

Proceedings

1    location for services by Mohuchy P.C. and asks,

2    introduces himself, would you like acupuncture services.

3    So there's not even an issue of whether or not they're

4    medically necessary because they're just being asked and

5    then they go to see him.

6              So in any event, these claimants go to that

7    location and in exchange for a kickback, as we have

8    alleged in the complaint and has been our theory of the

9    case throughout consistently, and in exchange for that

10   kickback, they are seen for acupuncture services for

11   which they bill and those services are medically

12   unnecessary.  But for the kickback, those claimants don't

13   go there.

14             Mr. Luis, Acupuncture Works, has no marketing,

15   has no advertising expense.  Has absolutely no physical

16   signage on the outside of the door.  There is no change

17   that a claimant walking by that building on a given day

18   says I want to go to Acupuncture Works.  They wouldn't

19   know it's there.  So that's what the case is about.

20             THE COURT:  Okay.  Now I am not going to ask

21   you to respond to that and we're not litigating it here,

22   but now you have this record of what their theory of the

23   case is, and if you think that you get an expert report

24   that's changing the theory of the case that requires you

25   to come back for further discovery, I will certainly hear

31

Proceedings

1   you because you shouldn't be unfairly prejudiced by that.

2   But I don't think that you can come back now and say is

3   that you don't know what the theory of the case is.

4             I wasn't sure that you could say it before but

5   I want to make sure that as of right now, you know it.  I

6   am going to grant the extension absent the kind of

7   switching theory that I just referred to, absent that, I

8   am not going to extend deadlines further at all.  The

9   case is too old.  You guys need to get it done.

10            MR. CHISARI:  Your Honor, I have just one other

11  issue with my client's records.  I would like on the

12  record who they intend to release those records to.

13            MR. HORN:  Yes, we -- I was going to mention

14  it.  We have a confidentiality agreement.  I think we

15  might want to -- if we are going to direct it, we can

16  incorporate him into the confidentiality agreement.

17            MR. CHISARI:  Yeah.

18            THE COURT:  I leave that all to you but I have

19  made the ruling on the motion to compel and the motions

20  to quash.  All right.  But guys, please, I really don't

21  anticipate any further extensions.

22            MR. HORN:  Yes, your Honor.

23            THE COURT:  So to the extent that you may count

24  on being able to get some more time later, don't say I

25  didn't warn you.

32

Proceedings

1          MR. HORN:  Thank you, your Honor.

2          THE COURT:  Anything else for today, folks?

3          MR. MARVIN:  Your Honor, may we just please

4    have a date for compliance by Yin Yang with the subpoena

5    which was the subject of the motion to compel?

6          THE COURT:  Oh, yeah, yeah.  Have it by next

7    Friday, please.  Okay.  Thank you, all.  Have a very good

8    day.

9          MR. STERN:  Thank you, your Honor.

10         MR. HORN:  Thank you.

11                   (Matter concluded)

12                        -oOo-

13

14

15

16

17

18

19

20

21

22

23

24

25

33

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **26th** day of **April**, 2016.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.